NOT FOR PUBLICATION

FILED
JEANNE A. NAUGHTON, CLERK
JUN - 6 2017
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

In re:

ROBYN B. BERNSTEIN,                           Case No. 15-33303 (JNP)

        Debtor.                                          Chapter 7

-------------------------------------------------X

ROBYN B. BERNSTEIN,

        Plaintiff,

v.                                                            Adv. Pro. No. 16-1002

UNITED STATES OF AMERICA,

        Defendant.

-------------------------------------------------X

## OPINION

**APPEARANCES:**

John R Crayton, Esquire
33 West Second Street
Moorestown, NJ 08057
*Attorney for the Plaintiff, Robyn B. Bernstein*

Kavitha Bondada, Esquire
Steven S. Ho, Esquire
Assistant United States Attorneys
U.S. Department of Justice
Tax Division
P.O. Box 227
Ben Franklin Station
Washington, DC 20044
*Attorneys for the Defendant, United States of America*

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

This adversary proceeding concerns the dischargeability of Robyn Bernstein's (the "Debtor") personal income tax liabilities for 2009 and 2010 owed to the Internal Revenue Service ("IRS"), in the amount of $375,000. The Debtor claims that she did not sign or review her 2009 and 2010 tax returns before they were filed by Daryl Turner, her ex-husband. Thus, the Debtor asserts that her debt to the IRS is dischargeable. For the reasons set forth below, the Court finds that the Debtor did voluntarily and intentionally file fraudulent tax returns and willfully evaded paying taxes in 2009 and 2010. Therefore, her debt to the IRS is nondischargeable.

## BACKGROUND

The Debtor had worked in the travel industry for about ten years, and was in the travel club business for a few years before she met Daryl Turner. During that time, she supervised staffs, ran day to day operations of various travel businesses, and opened other travel businesses in her name. In 2006, the Debtor started working at Deamworks, a business run by Mr. Turner. The Debtor and Mr. Turner married in 2007, after which they opened a number of travel club businesses together. The Debtor and Mr. Turner engaged in a scheme where they offered or promised travel deals to customers, which they knew were not available. Together, they took money from customers who, ultimately, did not receive the free cruises and round trip airfares they were promised.

In 2013, the State of New Jersey filed an indictment against the Debtor charging her with second and third degree theft by deception during 2009-2011. The State alleged that the Debtor and Mr. Turner ran travel club related businesses and knew that they would never provide the services they promised to club members. At sentencing, the Superior Court noted that Mr. Turner had nine vacation club companies and three gift or promotion companies, defrauded nearly 800 victims of over $2.5 million, and lived off of that money. The Debtor pled guilty to theft by deception and agreed to forfeit her interest in the assets seized. In the Superior Court, she testified

that she was pleading guilty because she was guilty, that no one had coerced her to plead guilty, and that her answers on the plea forms were true and accurate. The Superior Court ordered both the Debtor and Mr. Turner to pay approximately $2.5 million in restitution.

The Debtor and Mr. Turner divorced in 2014, and later the Debtor opened her own business, a fitness club, for which she personally maintains the books and records.

In December 2015, the Debtor filed a Chapter 7 bankruptcy petition. In January 2016, the Debtor filed a complaint seeking to discharge her personal income tax liability to the IRS for 2009 and 2010 in the approximate amount of $375,000.

The IRS filed a motion for summary judgment, arguing that the Debtor cannot discharge her liability under § 523(a)(1)(c) because her 2009 and 2010 tax returns failed to report over $500,000 of income from travel club related businesses she operated with Mr. Turner. In its motion for summary judgment, the IRS asserted that collateral estoppel precluded the Debtor from asserting that the debt is dischargeable.

The Debtor opposed the motion, asserting that she only pled guilty because her criminal attorney advised her that it would be the best course of action to avoid trial. The Debtor also blamed Mr. Turner for filing the fraudulent tax returns, and asserted that she never even looked at the tax returns when she signed them.

This Court entered an order granting, in part, and denying, in part, the IRS' motion for summary judgment on November 4, 2016. This Court noted that because the Debtor pled guilty in Superior Court, collateral estoppel applies to establish that the Debtor did not report income properly, that she made understatements of income, and that she displayed implausible or inconsistent behavior ("theft by deception"). However, this Court found issues of material fact that required a trial; specifically, whether the Debtor voluntarily and intentionally violated her

2

duty to evade or defeat taxes. Trial was held on January 12, 2017, after which the parties submitted proposed findings of fact and conclusions of law.

At trial, Mr. Turner, the Debtor, and Mr. Burton, a tax compliance officer with the IRS, testified.

The Debtor testified that she: did not know how to prepare a tax return, despite over ten years of business experience; had nothing to do with the finances of the travel club business operated by Mr. Turner, despite many of the businesses being in her name and her ability to write checks from the business; did not review or sign her 2009 and 2010 tax returns, despite previously stating to Mr. Burton, during his audit, that she had prepared them herself using Turbo Tax; and was not guilty to theft by deception, although she pled guilty to theft by deception in Superior Court.

Mr. Turner testified that he: was not involved in the movement of money within the travel club business, but also testified that he, and not the Debtor, controlled the funds moving in and out of the companies; prepared the Debtor's 2009 and 2010 tax returns without the Debtor's knowledge, despite previously testifying that the Debtor reviewed and signed the tax returns before he filed them; and did not remember what he said at his deposition, but later testified that he agreed with his deposition testimony. In sum, Mr. Turner's testimony was not credible. He appeared to be testifying in a manner to best help the Debtor, but when presented with previous contrary statements, he admitted that the previous statements were accurate.

Finally, Mr. Burton testified that: he has been an employee of the IRS for six and a half years; was assigned the Debtor's audit through the normal channels at the IRS; he asked the Debtor for more information, including bank statements, after reviewing her Schedule A of the tax return; that there were large, inconsistent, deposits being made into the Debtor's account; the

bank accounts were either in the Debtor's name or in the company's name – for which she was listed as vice president; and the Debtor told him that she prepared her 2009 and 2010 tax returns herself, using Turbo Tax. Mr. Burton testified that the Debtor made large understatements of income – over $500,000 – during 2009 and 2010, the same years for which she pleaded guilty to theft by deception. Mr. Burton also testified that he believed the tax returns were filed fraudulently and that the fabricated business expenses made on the 2009 and 2010 tax returns would be a badge of fraud.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) & (I). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[1]

## DISCUSSION

Section 523(a)(1)(C) of the Bankruptcy Code provides that tax debts are exempted from discharge if the debtor filed a fraudulent return or "willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). "The taxing authority bears the burden of proving by a preponderance of the evidence that the taxes are nondischargeable." In re Fliss, 339 B.R. 481, 486 (Bankr. N.D. Iowa 2006). The IRS argues that the Debtor filed fraudulent tax returns in 2009 and 2010, and that she willfully attempted to evade or defeat taxes.

---

[1] To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

I.   Filing Fraudulent Returns

In construing the fraud prong under § 523(a)(1)(C), courts have noted that the existence of fraud is a factual question and is determined from the record as a whole. See Berkery v. C.I.R., 192 B.R. 835, 841 (E.D. Pa. 1996), aff'd sub nom. In re Berkery, 111 F.3d 125 (3d Cir. 1997). Direct proof of fraud is rarely available. Therefore, fraud is most often demonstrated by circumstantial evidence. See id. Courts have identified certain "badges of fraud" which serve as circumstantial evidence, such as: "large understatements of income made consistently over time; failure to keep adequate records; failure to file tax returns; implausible or inconsistent behavior by the taxpayer; concealing assets; and failure to cooperate with taxing authorities." Id. Additional factors which may indicate fraud include: "the illegality of the activity generating the additional unreported income as well as the relative sophistication of the debtor." Id. When applying the badges of fraud, courts should base their decision on the totality of the circumstances, with no factor being determinative. See In re Shy, 305 B.R. 72, 81 (Bankr. N.D. Fla. 2003). Because the Debtor pled guilty in Superior Court, collateral estoppel applies to establish that the Debtor did not report income properly, that she made understatements of income, and that she displayed implausible or inconsistent behavior. At trial, the parties presented evidence of the remaining factors, including: (1) failure to keep adequate records: (2) failure to file tax returns; (3) concealment of assets; (4) cooperation with taxing authorities; (5) the illegality of the activity generating the additional unreported income; and (6) the Debtor's sophistication.

A. *Failure to Keep Records*

The Court finds that this badge of fraud falls slightly in favor of the IRS. Mr. Burton testified that after he was assigned this case, he issued an initial contact letter to the Debtor,

requesting documents such as a copy of the employer's reimbursement policy, travel contributions, etc. Mr. Burton stated that he had to ask the Debtor three times for her reimbursement policy, which was never received. When the Debtor finally did respond to the document request, she only provided some of the requested documents. Mr. Burton did not receive any bank statements from the Debtor.

Eventually, the Debtor did start cooperating with the IRS, providing some invoices, one bank statement, and attending meetings with Mr. Burton.

### B. Failure to File Tax Returns

The Debtor did file her tax returns in 2009 and 2010. Therefore, this factor falls in the Debtor's favor.

### C. Concealment of Assets

This Court finds that the Debtor did not conceal assets. This case is distinguishable from Berkery, where the debtor concealed large amounts of cash and held multiple bank accounts in different countries. 192 B.R. at 842. Here, on the other hand, the Debtor did not primarily deal in cash or hold bank accounts overseas. Further, the Superior Court found, and the Debtor testified, that she and Mr. Turner bought multiple luxury cars and luxury homes with their illegally attained assets, arguably flaunting, not concealing, their assets.

### D. Cooperation with Taxing Authorities

This Court finds that the Debtor did not cooperate with taxing authorities. The Debtor knew of her obligation to pay federal income taxes every year. Tr. 63: 1-2. Mr. Burton testified that he was assigned to audit the Debtor's tax returns and found that the Debtor underreported her income by over $500,000 in her 2009 and 2010 tax returns. The Debtor reported that she made $104,728 in wage income in 2009, and $120,969 in wage income in 2010. After receiving

the Debtor's bank statements, Mr. Burton noticed large, inconsistent deposits into the Debtor's account, unsupported by her reported income. Mr. Burton found that there was more money in the bank than was reported on the return. Tr. 93:12-20. Mr. Burton was told that the additional funds were from Mr. Turner's gambling winnings, but nothing was provided to support this. Id. Mr. Burton concluded that the Debtor made large understatements of income during 2009 and 2010, the same years for which she pled guilty to theft by deception. In addition, the Debtor agreed that she underreported her taxable income by over $500,000. Trial Exhibit P-6

As discussed above, the Debtor's testimony at trial was inconsistent. The Debtor claims that she reported income from all of the travel club businesses when she was working for them. Tr. 53: 7-10. She also claims that she did not review her 2009 and 2010 tax returns or sign them before Mr. Turner filed them. Tr. 79: 8-14. During the IRS' audit examination, however, the Debtor told Mr. Burton that she prepared the returns herself, using Turbo Tax. Tr. 106: 16-18. In addition, at the appeals level of her audit, before dischargeability was an issue, the Debtor agreed that she had underreported her taxable income by over $500,000, and underpaid her income tax by over $200,000. The Debtor accepted the appeals officer's determination, the 870-AD. At trial, though, the Debtor testified that she did not know what she was agreeing to and that she only did so to avoid a civil penalty. It was apparent that the Debtor's testimony has changed now that dischargeability is the issue.

Furthermore, as mentioned above, the Debtor did not initially cooperate with the IRS, specifically Mr. Burton, in responding to document requests and attending meetings.

### E. *Illegality of the Activity Generating Additional Unreported Income*

The Court finds that the Debtor's additional unreported income was generated by illegal activity. As discussed above, the Superior Court found that the Debtor and Mr. Turner had nine

vacation club companies and three gift or promotion companies, defrauded nearly 800 victims of over $2.5 million, and lived off of that money. The Debtor pled guilty to theft by deception for the years 2009 and 2010, the same years of the alleged fraudulent tax returns, and agreed to forfeit her interest in the assets seized.

This Court applied collateral estoppel to this issue when ruling on the Motion for Summary Judgement. Therefore, this badge of fraud falls in favor of the IRS.

*F. Debtor's Sophistication*

Finally, the Court finds that the Debtor has sufficient sophistication. At trial, the Debtor claimed that she has no background in accounting or tax preparation and therefore, she is not a sophisticated taxpayer. Additionally, she claims to not know how to prepare a tax return, never having prepared taxes herself. Tr. 66: 1-16. Despite this, the Court finds that evidence presented at trial shows that the Debtor has adequate sophistication. The Debtor has been in the travel business for ten years and, before that, she ran about thirty clubs related to a company called Living Well Lady Fitness Center. Tr. 49: 12-15. The Debtor supervised a staff, running the day to day operations of the travel business, and opened other travel businesses in her name. Moreover, Mr. Burton testified that the Debtor told him that she did prepare her own taxes. Finally, the Debtor now runs her own business, a fitness club, for which she handles the books and records. Given the Debtor's extensive business experience, the Court finds that she has sufficient business sophistication to know of a duty to file a tax return and to be truthful about the amount of income.

In conclusion, the IRS has shown six of the factors support a finding of filing fraudulent returns; while two fall in the Debtor's favor. With the exception of failure to keep records and failure to cooperate, the factors that fall in the IRS's favor do so overwhelmingly. Therefore, the

Court determines that the IRS has met its burden of proof and that the tax liabilities for 2009 and 2010 are nondischargeable because the filed tax returns were fraudulent.

II.     Willful Evasion

Even if the Debtor did not file fraudulent returns, the Court concludes that she willfully evaded the taxes. Willful evasion consists of a conduct element - that the Debtor attempted to evade or defeat taxes - and an intent element - that the Debtor did so willfully. See Berkery, 192 B.R. at 488.

In order to prove a willful attempt to evade or defeat a tax, the taxing authority must show that the debtor was aware of the duty to pay her taxes, had the wherewithal to pay the taxes and took steps to avoid paying them. "[S]everal factors which indicate a willful attempt to evade or defeat a tax obligation . . . include "understatements of income, failure to file tax returns, implausible or inconsistent behavior by the taxpayer, the failure to cooperate with the tax authorities, concealment of assets, dealing in cash, shielding income and otherwise frustrating collection efforts." "Conduct aimed at concealing income and assets constitutes a willful attempt to evade or defeat taxes." Id. at 488–89. The majority of courts have held that "affirmative conduct by a debtor designed to evade or defeat a tax is not required." In re Fegeley, 118 F.3d 979, 983 (3d Cir. 1997). Thus, "acts of culpable omissions a well as acts of commissions" meet the conduct requirement. Id. at 983.

The Court has already found that the Debtor did not report her income properly and that she understated her income, when the Court granted partial summary judgment to the United States. The Debtor's failure to report this income is an act of "culpable omission" that satisfies the conduct requirement under § 523(a)(1)(C). Id.

9

Concerning intent, courts have used the test for "civil willfulness." Id. at 984. In using the test for civil willfulness, courts "have interpreted 'willfully,' for purposes of § 523(a)(1)(C), to require that the debtor's attempts to avoid his tax liability were 'voluntary, conscious, and intentional.'" Id. Thus, to prevail, the IRS must establish that: (1) the debtor had a duty to file income tax returns; (2) the debtor knew he had such a duty; and (3) the debtor voluntarily and intentionally violated that duty. See id. The Court already granted partial summary judgment, finding that the IRS has satisfied the first two elements. The Court now finds that the IRS has satisfied the third element – that the debtor voluntarily and intentionally violated the duty to file returns.

The Debtor testified that she had no involvement with the preparation of her 2009 and 2010 tax returns and that they were prepared and filed by Mr. Turner, without her knowledge. Her testimony was not credible. Mr. Turner testified that he prepared the Debtor's tax returns for 2009 and 2010 himself, and that the Debtor did not have the opportunity to review or sign them. Tr. 16: 16-18. As discussed above, Mr. Turner's testimony at trial was not credible. At his deposition, Mr. Turner testified that although he prepared the Debtor's tax returns for 2009 and 2010, she did take the opportunity to review the returns. When pressed at trial, Mr. Turner admitted his deposition was truthful: Q: [Did] you give Ms. Bernstein her return to review? A: Yes. Based on what was told to me so far regarding my prior deposition testimony, yes." Tr. 17:5-7.

Additionally, Mr. Burton testified that in a meeting with the Debtor, regarding her tax audit, she admitted that she filed the 2009 and 2010 tax returns herself, using Turbo Tax. The Court finds this testimony most credible because Mr. Burton has nothing to gain from the

10

outcome of this case, and the Debtor made this statement to Mr. Burton at a time when potential dischargeability of tax liabilities was likely not an issue or concern in the Debtor's mind.

Finally, even if the Debtor did not sign or review the 2009 and 2010 tax returns, the Court finds that she is liable. "A taxpayer's signature on a return is sufficient proof of a taxpayer's knowledge of the instructions contained in the tax return form and in other contexts." U.S. v. McBride, 908 F. Supp. 2d 1186, 1206 (D. Ut. 2012). "In general, individuals are charged with knowledge of the contents of documents they sign—that is, they have 'constructive knowledge' of those contents." Consol. Edison Co. of N.Y., Inc. v. United States, 221 F.3d 364, 371 (2d Cir. 2000). In In re Crawley, 244 B.R. 121, 130 (Bankr. N.D. Ill. 2000), the debtors argued that they did not read and review the information in their tax returns, which were prepared for them by their accountant, thus not willfully failing to pay their taxes. Despite not reviewing the returns, the court there charged the debtors with knowledge of the contents of their returns, stating: "[P]eople who sign tax returns omitting income or overstating deductions often blame their accountant or tax preparer. But these arguments never go anywhere. People are free to sign legal documents without reading them, but the documents are binding whether read or not." Id. at 130 (quoting Novitsky v. Am. Consulting Engr's, L.L.C., 196 F.3d 699, 702 (7th Cir. 1999)).

In Burack v. United States, 461 F.2d 1282 (Ct. Cl. 1972), the court held that disregard of one's duties should not "be able to defeat the statutory liability fixed upon responsible persons by pleading that he did not know what he was signing and that his action was therefore not 'willful.'" Id. at 1292–93. See also Katz v. United States, 321 F.2d 7, 10 (1st Cir. 1963) ("A return is not short of wilful [sic] falsity because the taxpayer chooses to keep himself uninformed as to the full extent that it is insufficient, or as to what exact figures should have been inserted.

Innocence cannot outdistance ignorance."). Here, the Debtor trusted Mr. Turner to truthfully and correctly file her 2009 and 2010 tax returns, despite the Debtor knowing that Mr. Turner was under civil investigation at the time. Tr.79:5-14. The Debtor should have taken care to know what numbers were in the returns.

Therefore, even if the Debtor did not review her 2009 and 2010 tax returns which her ex-husband prepared, she still willfully violated her duty under § 523(a)(1)(C).

### III. Conclusion

For the reasons set forth above, the Court finds that the United States has met its burden of proof and that judgment should be entered in favor of the Defendant.

Dated: June 6, 2017

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE